## HALL v. BRASHEAR.

*To recover money, paid under a commutative contract to a party thereto; the latter must be put in mora.*

APPEAL from the District Court of St. Mary, *Boyce,* J. *Maskell,* for the plaintiff. *Dwight,* for the appellant. The judgment of the court was pronounced by

ROST, J. This suit originated in the same cause of action as that of *Preston, Executor,* v. *Brashear,* 9 Robinson, p. 52, in which the court gave judgment against the plaintiff as in case of non-suit. The facts of the case are fully stated in the opinion of the court, to which reference is had.

In the present case, *John Hall* gave his note unconditionally to the defendant, for the sum of $1,250, in consideration of a certificate to the following effect: "This is to certify that *John Hall* is entitled to one quarter of a share in the town of Far West, to be laid off on Berwick's Bay, on the plantation called Golden Farm, now occupied by *Walter Brashear,* the value of said quarter of a share being $1,250, payable the 1st of January, 1838, as per subscription list. (Signed) *Walter Brashear.*" The note was transferred by the defendant before maturity, duly paid by the maker, and subsequently transferred by him to the plaintiff, with all his rights against the defendant.

HALL<br>v.<br>BRASHEAR.

The plaintiff avers that he notified the defendant of the transfer, and that, on the 2d April, 1844, he demanded of him to be and appear at the office of the parish judge of the parish of St. Mary, on the 12th day of the same month, to make to him, the said plaintiff, a title and transfer of a quarter of a share in the town of Far West, which demand the defendant neglected to comply with, whereby he has suffered damages to the amount of $1,250 and interest, for which he prays judgment.

The defendant answered, in substance, that he had never been called upon by the trustees of the shareholders to convey the land, and that he is ready and anxious to do so when called upon according to agreement, and to fulfil all the obligations imposed upon him by his contract; that should the court be of opinion that he is authorised to make a title to the plaintiff, he is ready to do so, and prays that a reasonable time be allowed him for that purpose. The court below gave judgment in favor of the plaintiff, and the defendant appealed.

We concur with the late court in the case cited, that the party giving his note received what he bargained for, to wit, the certificate of stock. The ultimate establishment of the town was little thought of by either party. This was one of the reckless speculations, so common at the time it took place. The certificate was artfully drawn up, without either mortgage or privilege on the land, or any ultimate warranty whatever to the holder; for the plain reason that, if it had been otherwise, the transfer of it would have subjected the transferor to the warranties stipulated. The certificate was a mere delusion—a thing to speculate with. *John Hall* played a losing game with it, and courts of justice would be ill employed in assisting him, or those standing in his place, to retrieve the loss. The defendant is not in default, and the plaintiff cannot claim a transfer of his share to himself, by virtue of the contract under which he claims. One-tenth part of the stock only has been subscribed, and no one has ever been authorised to receive the title to the land.

It is said that, since the institution of this suit, the land has been sold by the sheriff, and that it is no longer in the power of the defendant to comply with his contract. We apprehend that, if the subscription list was now filled, as it seems it was intended to be before the land was to be conveyed, it would be an easy matter for the defendant to get back the land; and he cannot be considered in default, as long as that opportunity remains.

*John Hall* intended for others the loss which the sudden revulsion of 1837 brought upon himself. He bought the cast of the net, and he cannot complain that no fish was caught. It is within the range of possibility, that the defendant may hereafter properly be put in default. We will, therefore, as in the former case, give a judgment of non-suit.

It is ordered, that the judgment in this case be reversed; and that there be judgment against the plaintiff, and in favor of the defendant, as in cases of non-suit, with costs in both courts.